IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 15, 2015 at Knoxville

**STATE OF TENNESSEE v. KEIAHTEE JAMAL TERRELL**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1446     Steve R. Dozier, Judge**

_____

**No. M2015-00019-CCA-R3-CD – Filed December 11, 2015**

_____

The defendant, Keiahtee Jamal Terrell, pled guilty to aggravated burglary and robbery, Class C felonies, in exchange for an effective four-year sentence at 30%, with the manner of service to be determined by the trial court. On appeal, he argues that the trial court erred in denying judicial diversion or probation. After review, we affirm the sentencing decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Dustin E. Sharp, Nashville, Tennessee, for the appellant, Keiahtee Jamal Terrell.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 6, 2014, the Davidson County Grand Jury indicted the defendant and two co-defendants, Demontise Martez Drumwright and Secquoyah Shanice Smikes, for aggravated burglary acting in concert with others and robbery acting in concert with others, Class B felonies. Additionally, Ms. Smikes was indicted for prostitution. At the guilty plea hearing, the prosecutor recited the evidence the State would have presented had the case proceeded to trial:

Had the parties proceeded to trial on case number 2014-B-1446, the State anticipates the facts at trial would reveal that on March the 14th of [2014], a hotel employee reported two male subjects were attempting to break into room 284 at the Econo Lodge, located at 1412 Brick Church Pike here in Davidson County. Several officers responded to the call.

When Officer Brown arrived on the scene, Demontise Drumwright was inside room 284. Drumwright was screaming, walking around the room and refused to follow officers['] instructions. Officers escorted Mr. Drumwright out of the room. The victim Robert Hammonds was hiding in the bathroom. Secquoyah Smikes and [the defendant] were located in the parking lot. Hammonds related the following: He and Ms. Smikes were going to spend the night together at that location. At about 11:00 p.m. someone knocked on the door. Mr. Hammonds looked out of the peephole and saw two men standing outside of the room. He recognized one of the subjects as Ms. Smikes['s] exboyfriend, [the defendant]. Ms. Smikes ha[d] previously told Mr. Hammonds about how [the defendant] used to rob people.

Hammonds refused to open the door, the suspects began pounding on the door and kicked it open. The suspects then forced their way into the room and began assaulting Mr. Hammonds. He managed to get away from them[,] run into the bathroom and locked the door. The officers noticed scratches to the left side of Mr. Hammond[s'] neck, back and che[e]k, his shirt was also ripped.

Smikes originally told the officers that she was also a victim of the assault. She sustained asthma-type symptoms and was transported to General Hospital that night. [The defendant] told Officer Holycross that his girlfriend Ms. Smikes and Mr. Hammonds met and were going to hang out in a room in the Econo Lodge. [The defendant] stated that Smikes contacted him, stated she was uncomfortable with Hammonds and wanted [the defendant] to come to the room.

[The defendant] stated that he and his friend Drumwright went to the lodge and began banging on the door. [The defendant] stated the door opened, stepped inside. Mr. Hammonds began shutting the door on him. [The defendant] continued trying to push the door back open. At that time, [the defendant] stopped talking to Officer Holycross and refused to provide any other information.

At about 12:45 a.m. Officer Holycross placed [the defendant] under arrest and advised him of his rights. He said he understood his rights an[d] refused to talk. Due to discrepancies in her story, Ms. Smikes was questioned again after being advised of her rights by Officer Brown. She then confessed that she helped set Mr. Hammonds up. She agreed to go to the hotel with Mr. Hammonds and have sex with him. Smikes stated she waited until Hammonds was in the shower and then called [the defendant] and Mr. Drumwright to come and rob him.

The plan was to wait until the victim was naked and Smikes would let Drumwright and [the defendant] into the room. And [the defendant] and Drumwright knocked, Hammonds refused to open the door. Hammonds tried without success to stop Smikes from opening the door.

According to Ms. Smikes, Mr. Drumwright entered the room and began assaulting Mr. Hammonds. After he locked himself into the bathroom, Mr. Drumwright took Mr. Hammond[s'] car keys. Ms. Smikes admitted that it was premeditated and Mr. Drumwright would hide the keys outside of the room in the bushes and retrieve them later and take Mr. Hammond[s'] vehicle. The keys were not recovered.

At the November 13, 2014 sentencing hearing, Keylonzo Terrell, the defendant's brother, testified that the defendant could live with him and his family in Goodlettsville if the defendant were released on probation and that he would provide transportation for the defendant. He said he was aware of the defendant's juvenile record.

The twenty-year-old defendant testified that he left his mother's home at the age of eighteen and was living with his co-defendant at the time of the offenses. He said he quit school in the eleventh grade and acknowledged that he had some "juvenile problems" because he did not get the help he needed and "just gave up." The defendant said he had been accepted into the 180 Program, which could provide him with a job and help him earn his GED, if he were granted probation. Additionally, if granted probation, the defendant said he would "spend time with [his] family, go to school, try to abide by the rules on probation, [and] change for society." The defendant said he had a daughter who was almost two years old.

At the conclusion of the hearing, the trial court took the matter under advisement and subsequently entered an order on December 17, 2014, denying judicial diversion and ordering the defendant to serve his four-year sentence in confinement.

## ANALYSIS

The defendant argues that the trial court abused its discretion in denying judicial diversion or probation because "nothing in the record demonstrates that the seriousness of the offense was substantial enough to rise to the level of negating the precepts of the [S]entencing Act and supporting statutes."

Following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A). A qualified defendant is one who is found guilty or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought, is not seeking deferral of further proceedings for a sexual offense, a violation of section 71-6-117 or section 71-6-119, or a Class A or Class B felony, and who has not been previously convicted of a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b).

The decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court must consider all of the following factors: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. Id.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254

4

S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

5

The trial court imposed an effective sentence of four years. With regard to the manner of service of the sentence, the court determined:

> The Court must consider the lack or potential for rehabilitation in determining the sentence length or how the sentence is to be served. T.C.A. § 40-35-103. In making that determination, the Court notes the defendant's criminal history includes two weapon offenses and a prior [a]ggravated [b]urglary. The Court also notes the serious nature of this offense. Therefore, the Court denies the defendant's request for judicial diversion under § 40-35-313 and orders the defendant's four year sentence at 30% to serve.

In this case, we cannot conclude that the trial court abused its discretion in imposing a sentence of confinement. The court noted that the defendant's criminal history included two weapon offenses and a prior aggravated burglary. We note that these offenses apparently were set out in the record of the defendant's convictions, which is not contained in the record on appeal. However, the defendant has not contested the accuracy of this information. Accordingly, we affirm the sentencing determinations of the trial court.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE

6